## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JAMES E. KNOWLES and** | * | |
| **BEVERLY K. KNOWLES** | * | |
| | * | |
| **Plaintiffs** | * | |
| | * | |
| **VS.** | * | **CASE NO: 5:11-cv-01670-AKK** |
| | * | |
| **AMERICAN HOME MORTGAGE** | * | |
| **SERVICING, INC., JAUREGUI** | * | |
| **and LINDSEY, LLC** | * | **JURY TRIAL DEMANDED** |
| | * | |
| **Defendant(s)** | * | |
| | * | |

### FIRST AMENDED COMPLAINT
### Violations of the Fair Debt
### Collection Practices Act and Fraud
### Failure to Respond to QWR per Dodd Frank Amendments

This is an action seeking remedies as provided in Fair Debt Collection Practices Act for Defendants' false, deceptive and misleading representations prohibited by 15 U.S.C. § 1692e; communication containing a false impression of the character or legal status of the alleged debt as prohibited by 15 U.S.C. § 1692e(2). Plaintiffs seek remedies for Defendants' communication that gave the impression that nonpayment of the debt would result in the sale and that the action is prohibited by 15 U.S.C. § 1692e(4); Defendants' threat to take legal action that could not be legally taken 15 U.S.C. § 1692e(5); use of unfair or unconscionable means to collect an alleged debt (filing suit without authority and fraudulent assignment of mortgage) as prohibited by 15 U.S.C. § 1692f and advertising the debt for sale through a foreclosure notice as prohibited by 15 U.S.C. §1692d(4).

Plaintiffs further seek the recovery of actual and punitive damages from the Defendants for civil fraud in relation to their acts and their attempts to illegally separate the Plaintiffs' from their home.

1

Plaintiffs further seek damages brought by an individual consumer for Defendants' violations of the Truth in Lending Act, 15 U.S.C. §§ 1601, et seq. ("TILA"), and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, et seq. ("RESPA") the Fair Debt Collection Practices Act, 15 U.S.C §§ 1692, et seq. Fraud and Fraud on the Court. Specifically, Plaintiffs seek the remedies as provided in TILA and RESPA for Defendants' failures to respond to requests for the identity of the creditors of Plaintiffs' mortgage loan as required by 15 U.S.C. § 1641(f) and 12 U.S.C. § 2605(e).

## JURISDICTION

1.     Jurisdiction is conferred on this Court pursuant to the provisions of 28 U.S.C § 1334 in that this proceeding arises in Madison County, Alabama.

2.     This Court has both personal and subject matter jurisdiction to hear this case pursuant to 28 U.S.C §§ 157(b)(2), 1334.

3.     This Court has supplemental jurisdiction to hear all state law claims pursuant to 28 U.S.C. § 1367.

4.     This Court has jurisdiction to hear the claims for relief under the Real Estate Settlement Procedures Act pursuant to 12 U.S.C. § 2614.

5.     Claims in this case will exceed seventy five thousand ($75,000) dollars.

6.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b).

## PARTIES

7.     The Plaintiff James E. Knowles is a resident of Madison County, Alabama and over the age of nineteen (19) years.

8.     The Plaintiff Beverly K. Knowles is a resident of Madison County, Alabama and over the age of nineteen (19) years.

9.     Defendant American Home Mortgage Servicing, Inc. ("AHMSI") is a corporation that services residential mortgage loans and is head-quartered at 4600 Regent Boulevard, Suite 200, Irving, Texas 75063.

10.     AHMSI was formerly a subsidiary of American Home Mortgage Investment Corporation and was engaged in originating, purchasing, and selling residential mortgages before it was purchased by Wilbur Ross & Co. LLC.

11.     Defendant Jauregui and Lindsey, LLC ("J&L"), is an Alabama-based law firm located at 2110 Devereux Circle, Suite 100, Birmingham, AL 35243.

## FACTS

12.     On May 4, 2006, Option One Mortgage Corporation, a California corporation ("Option One"), made a mortgage loan to Plaintiffs for the purpose of refinancing the Property, referred to in this complaint as the "Mortgage Loan".

13.     In connection with the Mortgage Loan the Plaintiffs executed a promissory note (the "Mortgage Note") in the original principal amount of $322,400.00 payable to Option One.

14.     The Mortgage Note was secured by the Mortgage Loan on the Property recorded on June 14, 2006, at instrument number 20060614000392420 in the office of the Judge of Probate of Madison County, Alabama, which named Option One as Lender.

15.     To the best of Plaintiffs' knowledge, information and belief, the Mortgage Loan is serviced by Defendant AHMSI.

16.     AHMSI bought said servicing rights from the bankruptcy estate of American Mortgage Holding.

17.     Plaintiffs believe and therefore allege that AHMSI acquired subject mortgage, post default, making them subject to the FAIR DEBT COLLECTION PRACTICES ACT pursuant to 15 U.S.C. § 1692a(6).

18.     The Plaintiffs are consumers as defined by 15 U.S.C. § 1692a(3).

19.     The debt which is the subject of this action is a consumer debt as defined by 15 U.S.C. § 1692a(5).

20.     Plaintiffs believe and therefore allege that the true holder and owners of the Mortgage Note are unknown securitized trusts or Government Sponsored Entities.

21.     The Mortgage Loan is a consumer credit transaction within the meaning of, and subject to, TILA.

22.     The Mortgage Loan is a "federally related mortgage loan" as defined in 12 U.S.C. § 2602(1) and therefore subject to RESPA.

23.     In 2007, Plaintiff James Knowles was diagnosed with Alzheimer's Disease and rendered completely disabled.

24.     Plaintiff James Knowles' medical condition cut the family income substantially.

25.     Plaintiffs struggled to make their monthly mortgage obligations, while attempting to put their child through college.

26.     Plaintiff Beverly Knowles has attempted three HAMP Modifications, none of which were successful.

27.     In 2010, Plaintiffs made an effort to save the family home by filing a Chapter 13 bankruptcy case in the Northern District of Alabama, Northern Division, Case Number 10-83378-JAC (the "2010 Bankruptcy Case").

28.     On August 30, 2010, Defendant J&L filed a Motion to Lift the Automatic Stay in the 2010 Bankruptcy Case at Document 19 (the "J&L MFRS"). Said motion is attached hereto as **Exhibit A.**

29.     In the J&L MFRS, Defendant J&L states that HSBC Bank USA, National Association, as Trustee for Benefit of the Holders of the Citigroup Mortgage Loan Trust, Inc., Asset-Backed Pass-through Certificates, Series 2007-SHL1 ("HSBC")is the owner of the mortgage.

30.     The J&L MFRS attaches a copy of the original Mortgage of Option One, with no assignment present.

31.     Defendant J&L knew when they filed the Motion for Relief of Stay that it was a false and fraudulently represented that HSBC was the secured

mortgage creditor instead of Option One, the only recorded creditor at the time of filing.

32.     The conduct of Defendant J&L was a successful effort to conceal from the Plaintiffs and, collaterally, the Court the fact that HSBC was not perfected, preventing the exercise of strong-arm powers under 11 U.S.C. § 544(a)(3) against the Defendant trust, and insuring that their client would be treated as a "secured" creditor to the detriment of the "unsecured" class of creditors.

33.     Relief was granted to J&L's MFRS.

34.     Plaintiffs had no way of knowing that HSBC was in fact, an unsecured debt, or what that meant to their bankruptcy estate.

## FACTUAL ALLEGATIONS WITH REGARDS TO THE FAIR DEBT COLLECTION PRACTICES ACT VIOLATIONS.

35.     On May 2, 2011 Defendant J&L sent a letter to Plaintiffs stating that they represented Fidelity National Foreclosure and Bankruptcy Solutions ("Fidelity") on behalf of AHMSI, servicing agent for HSBC (the "May 2 Letter").

36.     Plaintiffs believe and therefore allege that Fidelity was spun out in 2008 and no longer exists.

37.     The May 2 Letter was an industry standard "notice of acceleration" and an "attempt to collect a debt" and foreclosure notice, thereby making Defendant J&L subject to the Fair Debt Collection Practices Act.

38.     On May 6, 2011, Defendant J&L began publication of the foreclosure notice.  A copy of the foreclosure notice is attached hereto as **Exhibit B**.

39.     The publication states that Option One assigned Plaintiffs' mortgage to HSBC.

40.     Said foreclosure notice was published on May 6, May 13 and May 20, 2011.

41.     Said foreclosure notice made demand for payment in full in the amount of $411,093.38 plus accrued interest and attorney's fees and expenses.

42.     On May 19, 2011, Defendant J&L recorded the Assignment of Mortgage in the Madison County Probate Court from Sand Canyon f/k/a Option One to HSBC (the "J&L Assignment").  Said assignment is attached hereto as **Exhibit C**.

43.     The J&L Assignment claims an "effective date" of May 2, 2011 and is signed by Elizabeth Boulton, AVP Sand Canyon Corporation on May 9, 2011.

44.     Elizabeth Boulton gave a deposition in a case, *In Re: Obagi*, in the Bankruptcy Case 10-10494 SCC in the Southern District of New York on May 5, 2011 and testified that she was an employee of AHMSI, located in Jacksonville, Florida and had been employed there for two years.

45.     Plaintiffs believe and therefore allege that Elizabeth Boulton is not an employee of Sand Canyon Corporation.

46.     Plaintiffs believe and therefore allege that the J&L Assignment is a fraud.

47.     On March 18, 2009, Dale M. Sugimoto, President of Sand Canyon Corporation made a declaration in a bankruptcy case (07-11862 EWM) in the Eastern District of Louisiana. Said declaration is attached hereto as **Exhibit D**.

48.     Mr. Sugimoto's declaration states in part that, "Sand Canyon also **does not own any residential real estate mortgages**." (emphasis supplied).   See Exhibit D at paragraph 7.

## STATEMENT OF FACTS RELATED TO
## RESPA/TILA ISSUES

49.     On March 5, 2011, Plaintiffs, through counsel, mailed a letter to Defendant AHMSI requesting the name of the owner of the Mortgage Note and clearly alerted Defendant AHMSI to the fact that this request was being made pursuant to TILA §131(f).  Said letter served as their "qualified written request" as defined in § 6(e)(1)(B) of the Real Estate Settlement Procedures Act ("RESPA") [12 U.S.C. § 2605(e)(1)(B)] (the "QWR Letter").  Thus Plaintiffs' QWR Letter had the dual effect of invoking Plaintiffs' rights under TILA §131(f) as well Plaintiffs' rights under RESPA § 6(e)(1) A copy of Plaintiffs' request, the original of which Plaintiffs' counsel mailed certified with return receipt requested, is attached hereto as **Exhibit E**.

50.　On March 12, 2011, the United States Postal Service returned the QWR Letter unopened and marked "REFUSED".  A copy of the "REFUSED" envelope is attached hereto as **Exhibit F**.

51.　On March 12, 2011, Plaintiffs, through counsel, mailed the QWR Letter again to Defendant AHMSI in a "non-certified and non-letterhead" envelope, however, did contain Plaintiffs counsel's return address.  Defendant AHMSI failed to respond to this mailing.

52.　On April 1, 2011, Plaintiffs sent a third and final mailing of the QWR Letter to Defendant AHMSI, via Express Mail with Delivery Confirmation.  A copy of the Delivery Confirmation showing that Defendant AHMSI received the QWR Letter on April 4, 2011 is attached hereto as **Exhibit G.**

53.　On or about April 6, 2011, Plaintiffs received an acknowledgement from Defendant AHMSI.  A copy of the letter of acknowledgement is attached hereto as **Exhibit H.**

54.　Defendant AHMSI received the Plaintiffs' QWR Letter on April 4, 2011, as evidenced by Exhibit G, and failed to respond within 5 days as required by 12 U.S.C. § 2605(e)(1)(A) as amended effective July 16, 2010 by the Dodd-Frank Financial Reform Act and Reg. X Section 3500.21(e)(1).

55.　As of the date of this filing Defendant AHMSI has failed to respond to Plaintiffs' QWR Letter.

56.　Defendant AHMSI failed to identify the owner of the Mortgage Note within 10 days of receipt of the letter as required by 12 U.S.C. § 2605(k) as amended effective July 16, 2010 by the Dodd-Frank Financial Reform Act and, as recently as the date of this filing, has never provided Plaintiffs with a response, thus violating both 12 U.S.C. § 2605(e)(1) (RESPA) and 15 U.S.C. § 1641(f) (TILA) with respect to the Mortgage Loan.

## COUNT ONE
## FAIR DEBT COLLECTION PRACTICES ACT

57.　The Plaintiffs adopt and reallege all prior paragraphs of this Amended Complaint as if fully set out herein.

58.     The Plaintiffs believe and thereby allege that the statement "they represented Fidelity" in the letter by Defendant J&L is false, deceptive and misleading representation, thereby violating the Fair Debt Collection Practices Act at 15 U.S.C. § 1692e.

59.     The Plaintiffs believe and thereby allege that the publication by Defendant J&L misrepresents the character and legal status of the debt, thereby violating the Fair Debt Collection Practices Act at 15 U.S.C. § 1692e(2).

60.     The foreclosure notice stated that said debt was owed to HSBC.

61.     At the time Defendant J&L began publication of said notice, the J&L Assignment had not been recorded, whereby, HSBC was not a perfected party and had no standing to assert a claim against Plaintiffs.

62.     The advertisement of the foreclosure notice constitutes a violation of the Fair Debt Collection Practices Act at 15 U.S.C. § 1692e(4).

63.     The publication would lead the least sophisticated debtor to believe that non-payment would result in the sale of the property.

64.     The fraudulent assignment of mortgage, recorded by Defendant J&L on May 19, 2011, constitutes a violation of the Fair Debt Collection Practices Act, using an illegal means to collect a debt at 15 U.S.C § 1692e(5).

65.     Counsel knew or should have known that the assignment, that was prepared at their request, was from an entity that no longer existed and therefore, was a legal impossibility.

66.     Counsel certainly knew they fraudulently represented to the Court in their MFRS that HSBC had a "secured" interest in the subject property, and that had they not fraudulently misrepresented the real facts, they would have, no interest at all.

67.     The Plaintiffs believe and thereby allege that the actions of Defendant J&L is unfair and unconscionable, thereby violating the Fair Debt Collection Practices Act at 15 U.S.C. § 1692f.

68.     The Plaintiffs believe and thereby allege that publication of the foreclosure notice by Defendant J&L is an advertised sale of the debt, thereby violating the Fair Debt Collection Practices Act at 15 U.S.C. § 1692d(4).

69.     The J&L Assignment, executed by Elizabeth Boulton as Vice President for Sand Canyon, is false, deceptive and misleading representation, thereby violating the Fair Debt Collection Practices Act at 15 U.S.C. § 1692e.

70.      Elizabeth Boulton is actually an employee of Defendant AHMSI and had no authority to execute said assignment to her employer.

71.     Sand Canyon was out of business when the assignment was made.

72.     If Boulton had once held authority to make said assignments, they ended with the dissolution of the corporation.

73.     Defendant AHMSI is vicariously liable for the conduct of their Vice President, Elizabeth Boulton.

74.     The J&L Assignment executed by Boulton is a fraud. Sand Canyon f/k/a Option One owns nothing to assign pursuant to the attached declaration of the President of Sand Canyon, stating under oath, that as early as 2008, Sand Canyon owned "no real property mortgages," and that they were only in the business of cleaning up the litigation left over from Option One; therefore, Sand Canyon f/k/a Option One, had nothing for Elizabeth Boulton to assign, thereby violating the FAIR DEBT COLLECTION PRACTICES ACT, using an illegal means to collect a debt at 15 U.S.C § 1692e(5).

75.     As a proximate consequence of these actions, the Plaintiffs were caused to suffer harm in that a foreclosure action has been instituted against them, in that they have been required to pay illegal, unauthorized and bogus fees and charges and that Plaintiffs have suffered mental anguish and emotional distress due to the threat of losing their home.

## COUNT TWO
## FRAUD

76.     The Plaintiffs adopt and reallege all prior paragraphs of this Amended Complaint as if fully set out herein.

77.     Defendant J&L filed false pleadings in their MFRS.

78.     Plaintiffs and Plaintiffs' counsel relied on same.

79.     Plaintiffs consented to J&L MFRS due to false claims filed in the bankruptcy case, based on their reliance on the documents filed by Defendant J&L.

80.     Had Plaintiffs known that HSBC through its agents, AHMSI and J&L had no legally and properly secured interest in the subject matter property, Plaintiffs would have never consented to the MFRS.

81.     As a proximate consequence of these actions, the Plaintiffs were caused to suffer harm in that a foreclosure action has been instituted against them, in that they have been required to pay illegal, unauthorized and bogus fees and charges and that Plaintiffs have suffered mental anguish and emotional distress due to the threat of losing their home.

## COUNT THREE

### FAILURE TO RESPOND TO
### "QUALIFIED WRITTEN REQUEST"

82.     The Plaintiffs adopt and reallege all prior paragraphs of this Amended Complaint as if fully set out herein.

83.     Defendant AHMSI first "REFUSED" to accept Plaintiffs' initial attempt to mail the QWR Letter on March 5, 2011, in violation of 12 U.S.C. § 2605(e)(1)(A).

84.     Defendant AHMSI then failed to acknowledge receipt of the QWR Letter that was sent first-class mail on March 12, 2011, in violation of 12 U.S.C. § 2605(e)(1)(A).

85.     The acts of the defendants evidence a pattern and practice that is oppressive, malicious and intentional, and done with full knowledge that the Plaintiffs would suffer harm as a result.

86.     As a proximate consequence of these actions, the Plaintiffs were caused to suffer harm in that a foreclosure action has been instituted against them, in that they have been required to pay illegal, unauthorized and bogus fees and

charges and that Plaintiffs have suffered mental anguish and emotional distress due to the threat of losing their home.

**COUNT FOUR**

**FAILURE TO PROVIDE THE IDENTITY
OF THE OWNER OR MASTER SERVICER**

87.     The Plaintiffs adopt and reallege all prior paragraphs of this Amended Complaint as if fully set out herein.

88.     Defendant AHMSI failed and/or refused to take any action in response to the first and second QWR sent by Counsel to Plaintiffs within 60 days, in violation of 12 U.S.C. § 2605(e)(2), alternatively, within 30 days, as required by the Dodd-Frank Act.

89.     The acts of the defendants evidence a pattern and practice that is oppressive, malicious and intentional and done with full knowledge that the Plaintiffs would suffer harm as a result.

90.     As a proximate consequence of these actions, the plaintiffs were caused to suffer harm in that a foreclosure action has been instituted against them, in that they have been required to pay illegal, unauthorized and bogus fees and charges and that plaintiffs have suffered mental anguish and emotional distress due to the threat of losing their home.

**<u>PRAYER FOR RELIEF</u>**

**WHEREFORE**, as a result of the wrongdoing detailed herein, the Debtors respectfully request that the court issue a judgment that:

A.     Find that the conduct of Defendant J&L violated the Fair Debt Collection Practice act, including statutory damages in the amount of $1,000.00, plus attorney's fees, and actual damages, or alternatively, $2,000.00 under the Dodd-Frank Act;

B.     Find that the conduct of Defendant AHMSI violated the Fair Debt Collection Practice Act, including statutory damages in the amount of $1,000.00, plus attorney's fees, and actual damages, or alternatively, $2,000.00 under the Dodd-Frank Act;

C.  Find that the assignment of mortgage by Elizabeth Boulton is a fraud, and void;

D.  Find that HSBC has no enforceable secured or unsecured claim against the Subject Property of the estate in this bankruptcy proceeding;

E.  Award the Plaintiffs relief provided by TILA as to the violation of TILA set forth above, including statutory damages in the amount of $4,000.00;

F.  Award the Plaintiffs relief provided by RESPA as to the violation of RESPA set forth above, including statutory damages in the amount of $2,000.00 per violation;

G.  Award the Plaintiffs actual damages for fraud, if any be proven, reasonable attorney's fees, and costs expended in this proceeding;

H.  Award an appropriate amount of actual and punitive damages in an amount to be determined by this court;

I.  Award any appropriate equitable or injunctive relief necessary to address the wrongful conduct of the Defendants herein;

J.  Award the Plaintiffs and Plaintiffs' counsel all reasonable costs and expenses in this case in an amount to be determined by this Court; and

K.  Award any and all appropriate, other, further and additional relief as the court may deem just and proper.

Dated this 8th day of August, 2011.

Respectfully Submitted,

/s/ D.W. Grimsley Jr.

/s/ Tammy C. Woolley
Attorneys for Plaintiffs

OF COUNSEL:
WOOLLEY, EDGE & GRIMSLEY, LLC
21 South Section Street

Fairhope, Alabama 36532
Phone: 251-866-6747
Fax: 251-990-0626
Email: dwgrimsleyjr@me.com
        tammy766@gmail.com

## **DEMAND FOR JURY TRIAL**

The Plaintiffs hereby demand a trial by struck jury on all claims so triable before the Court.

/s/ D.W. Grimsley Jr.


**SERVICE ADDRESS FOR DEFENDANTS:**

**American Home Mortgage Servicing, Inc.**
**4600 Regent Blvd.**
**Irving, TX 75063**

**Juaregui & Lindsey, LLC**
**2110 Devereux Circle**
**Suite 100**
**Birmingham AL 35243**

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

IN RE:  JAMES E. KNOWLES and          )
        BEVERLY K. KNOWLES,            )          CHAPTER 13
                                       )          CASE NO.  10-83378-JAC
                                       )
              Debtor(s).               )

## MOTION TO LIFT THE AUTOMATIC STAY

Comes now American Home Mortgage Servicing, Inc. ("AHMSI"), as servicing agent for HSBC Bank USA, National Association, as Trustee for Citigroup Special - CMLTI 2007-SHL1 (HSBC Bank"), and moves this Court, pursuant to 11 U.S.C. § 362, for an order lifting the automatic stay on certain property which is currently subject to an interest held by HSBC Bank and shows unto the Court the following:

1.  HSBC Bank is a secured creditor of the above-named Debtor(s) being the holder and owner of a certain note in the original principal amount of $322,400.00, executed by Debtor(s), and payable to the order of Option One Mortgage Corporation, and is secured by a mortgage on certain real estate located in Madison County, Alabama, as evidenced by the attached instruments.

2.  AHMSI avers that Debtor(s) has/have been in default in the payment of the post-petition installments due HSBC Bank, as assignee of said note and mortgage, pursuant to the terms of said note, since the filing of the herein Chapter 13 proceeding and thereafter, and further the Borrower(s) have indicated their intention to surrender their interest in said property.

WHEREFORE, AHMSI/HSBC Bank respectfully requests that the Court issue an order stating that the automatic stay is lifted pursuant to 11 U.S.C. § 362, and said property be released to AHMSI/HSBC Bank so as to permit AHMSI/HSBC Bank to liquidate its security and to apply the proceeds to said indebtedness secured thereby, and to such other relief to which it may be entitled.

By:  /s/ Michael W. Lindsey
     MICHAEL W. LINDSEY
     Jauregui & Lindsey, LLC
     Attorney for AHMSI
     2110 Devereux Circle, Suite 100
     Birmingham, Alabama 35243
     (205) 988-8888

## CERTIFICATE OF SERVICE

I  hereby certify that a copy of the foregoing has been served upon the following by United States mail, postage prepaid and properly addressed, or by electronic mail, on August 30, 2010, to-wit:

| Amy K. Tanner, Esq. | Phillip A. Geddes | James E. Knowles |
|---|---|---|
| Attorney for Debtor(s) | Chatper 13 Trustee | Beverly K. Knowles |
| 415 Church Street NW | Northern District of Alabama | P. O. Box 647 |
| Suite 100 | Northern Division | Meridianville, AL 35759 |
| Huntsville, AL 35801 | P. O. Box 2388 | |
| | Decatur, AL 35602 | |

By:  /s/ Michael W. Lindsey
     MICHAEL W. LINDSEY

## ADJUSTABLE RATE NOTE
### (LIBOR Index - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

NOTE / NOTE

1205  STEGER RD,  MERIDIANVILLE, AL 35759-1323

[Property Address]

**1.  BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S.  $322,400.00  (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is

Option One Mortgage Corporation, a California Corporation

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.  INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of  9.400%  . The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.  PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on  July 01  , 2006  . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on,

June 01  , 2036  , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  OPTION ONE MORTGAGE CORPORATION
P.O. BOX 92103 LOS ANGELES, CA 90009-2103

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S.  $2,687.42  . This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**(D) Application of Payments**

Payments received by the Note Holder will be applied in the following order: (i) prepayment charges due under this Note; (ii) amounts payable under paragraph 2 of the Security Instrument (defined below); (iii) interest due under this Note; (iv) principal due under this Note; and (v) late charges due under this Note.

**4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of  June 01  , 2008  , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding

SIX AND 3/10  percentage point(s) ( 6.300%  ) to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

ALABAMA ADJUSTABLE RATE NOTE-LIBOR INDEX - Single Family
Page 1 of 3

CERTIFIED TO BE A TRUE AND CORRECT COPY OF THE ORIGINAL
ALNT0021.wp (04-12-02)

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than    12.400%    or less than    9.400%    . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than    15.400%    or less than    9.400%    .

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5.    **BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.

If within    24 Months    from the date of execution of the Security Instrument I make a full prepayment or, in certain cases, a partial prepayment, I will at the same time pay to the Note Holder a prepayment charge.  In no event will such a charge be made unless it is authorized by state or federal law.  The prepayment charge will be equal to six (6) months advance interest on the amount of any prepayment that, when added to all other amounts prepaid during the twelve (12) month period immediately preceding the date of the prepayment, exceeds twenty percent (20%) of the original principal amount of this Note.

6.    **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

7.    **BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    6.000%    of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all interest that I owe on that amount, together with any other charges that I owe under this Note or the Security Instrument, except as otherwise required by applicable law.

**(C) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(D) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law, whether or not a lawsuit is filed. Those expenses include, for example, reasonable attorneys' fees.

8.    **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9.    **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10.    **WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

ALNT6022.wp (04-12-02)

11. **SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
JAMES E KNOWLES   -Borrower                         -Borrower

_____ (Seal)        _____ (Seal)
                    -Borrower                         -Borrower

_____ (Seal)        _____ (Seal)
                    -Borrower                         -Borrower

[Sign Original Only]

WHEN RECORDED MAIL TO:
OPTION ONE MORTGAGE CORPORATION
P.O. BOX 57096
IRVINE, CA 92619-7096
ATTN: RECORDS MANAGEMENT

2006061400039242O 1/11 $44.75
Madison Cnty Judge of Probate,AL
06/14/2006 02:59:41PM FILED/CERT

Loan Number: 051066113

Servicing Number: 0021622625-0

[Space Above This Line For Recording Data]

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on May 24, 2006 . The grantor is
JAMES E KNOWLES AND BEVERLY KNOWLES, HUSBAND AND WIFE

("Borrower"). This Security Instrument is given to
    Option One Mortgage Corporation, a California Corporation

which is organized and existing under the laws of CALIFORNIA , and whose
address is
                    3 Ada, Irvine, CA 92618
("Lender"). Borrower owes Lender the principal sum of
THREE HUNDRED TWENTY TWO THOUSAND FOUR HUNDRED
       . . . AND NO/100THs         Dollars (U.S. $322,400.00         ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides
for monthly payments, with the full debts, if not paid earlier, due and payable on June 01, 2036 .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and
all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced
under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's
covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby
mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following
described property located in
                            Madison                    County, Alabama:

08-02-04-0-000-026-002
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.

which has the address of 1205 STEGER RD, MERIDIANVILLE
                                                                        [Street, City],
Alabama      35759-1323       ("Property Address");
             [Zip Code]

        TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever,
together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and
fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this
Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

ALABAMA - Single Family
Page 1 of 7                                                              ALD10011.wp (11-30-01)

BILLY C JEWELL
5280 OLD SPRINGVILLE RD
PINSON, AL 35126

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances or record.

COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates or expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in thee manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If the Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower; (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the hold of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, or applicable Law otherwise requires, insurance proceeds shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining any

ALD10012.wp (11-30-01)



Loan Number: 0510662133    Servicing Number: 002162262    Date: 05/24/06

such insurance proceeds, and then, at Lender's option, in such order and proportion as Lender may determine in its sole and absolute discretion, and regardless of any impairment of security or lack thereof: (i) to the sums secured by this Security Instrument, whether or not then due, and to such components thereof as Lender may determine in its sole and absolute discretion; and/or (ii) to Borrower to pay the costs and expenses of necessary repairs or restoration of the Property to a condition satisfactory to Lender. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, Lender may collect the insurance proceeds. Lender may, in its sole and absolute discretion, and regardless of any impairment of security or lack thereof, use the proceeds to repair or restore the Property or to pay the sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower;s right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

If Borrower obtains earthquake insurance, any other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by Lender, then such insurance shall (i) name Lender as loss payee thereunder, and (ii) be subject to the provisions of this paragraph 5.

6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower acknowledges that the Lender does not desire to make a loan to Borrower secured by this property on the terms contained in the Note unless the property is to be occupied by Borrower as Borrower's primary/secondary residence. Lender makes non-owner residence loans of different terms. Borrower promises and assures Lender that Borrower intends to occupy this property as Borrower's primary/secondary residence and that Borrower will so occupy this property as its sole primary/secondary residence within sixty (60) days after the date of the Security Instrument. If Borrower breaches this promise to occupy the property as Borrower's primary/secondary residence, then Lender may invoke any of the following remedies, in addition to the remedies provided in the Security Instrument; (1) Declare all sums secured by the Security Instrument due and payable and foreclose the Security Instrument, (2) Decrease the term of the loan and adjust the monthly payments under the Note accordingly, increase the interest rate and adjust the monthly payments under the Note accordingly, or (3) require that the principal balance be reduced to a percentage of either the original purchase price or the appraised value then being offered on non-owner occupied loans.

Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

Borrower shall, at Borrower's own expense, appear in and defend any action or proceeding purporting to affect the Property or any portion thereof or Borrower's title thereto, the validity or priority of the lien created by this Security Instrument, or the rights or powers of Lender with respect to this Security Instrument or the Property. All causes of action of Borrower, whether accrued before or after the date of this Security Instrument, for damage or injury to the Property or any part thereof, or in connection with any transaction financed in whole or in part by the proceeds of the Note or any other note secured by this Security Instrument, by Lender, or in connection with or affecting the Property or any part thereof, including causes of action arising in tort or contract and causes of action for fraud or concealment of a material fact, are, at Lender's option, assigned to Lender, and the proceeds thereof shall be paid directly to Lender who, after deducting therefrom all its expenses, including reasonable attorneys' fees, may apply such proceeds to the sums secured by this Security Instrument or to any deficiency under this Security Instrument or may release any monies so received by it or any part thereof, as Lender may elect. Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement thereof. Borrower agrees to execute such further assignments and any other instruments as from time to time may be necessary to effectuate the foregoing provisions and as Lender shall request.

7. Protection of Lender's Rights in the Property. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate in effect from time to time and shall be payable, with

Page 3 of 7                                                                                ALD10013.wp (11-30-01)

interest, upon notice from Lender to Borrower requesting payment.

    **8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments no longer be required, at the option of Lender, of mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirements for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

    **9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

    **10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking or any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Lender may apply, use or release the condemnation proceeds in the same manner as provided in paragraph 5 hereof with respect to insurance proceeds.

    If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

    Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not exceed or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

    **11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

    **12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph

17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the

Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

    **13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charge, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

    **14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

    **15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

    **16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

Page 4 of 7                             ALD10014.wp (11-30-01)

17. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate.** if Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days for such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration has occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorney's fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more change of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will also contain any other information required by applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law. The holder of the Note and this Security Instrument shall be deemed to be the Lender hereunder.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

Borrower shall be solely responsible for, shall indemnify, defend and hold harmless Lender, its directors, officers, employees, attorneys, agents, and their respective successors and assigns, from and against any and all claims, demands, causes of action, loss, damage, cost (including actual attorneys' fees and court costs and costs of any required or necessary repair, cleanup or detoxification of the Property and the preparation and implementation of any closure, abatement, containment, remedial or other required plan), expenses and liability directly or indirectly arising out of or attributable to (a) the use, generation, storage, release, threatened release, discharge, disposal, abatement or presence of Hazardous Substances on, under or about the Property, (b) the transport to or from the Property of any Hazardous Substances, (c) the violation of any Hazardous Substances law, and (d) any Hazardous Substances claims.

As used in paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

ADDITIONAL COVENANTS. Borrower and Lender further covenant and agree as follows:

21. **Acceleration; Remedies.** If any installment under the Note or notes secured hereby is not paid when due, or if Borrower should be in default under any provision of this Security Instrument, or if Borrower is in default under any other mortgage or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest thereon shall at once become due and payable at the option of Lender without prior notice, except as otherwise required by applicable law, and regardless of any prior forbearance. In such event, Lender, at its option, and subject to applicable law, may then or thereafter invoke the power of sale and/or any other remedies or take any other actions permitted by applicable law. Lender will collect all expenses incurred in pursuing the remedies described in this Paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

ALD10015.wp (11-30-01)

If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in paragraph 14. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in

Madison                    County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a fee for releasing the Property for services rendered if the charging of the fee is permitted under applicable law.

23. **Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

24. **Misrepresentation and Nondisclosure.** Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which this Security Instrument secures, and in the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice or demand, shall have the right to declare the indebtedness secured by this Security Instrument, irrespective of the maturity date specified in the Note or notes secured by this Security Instrument, immediately due and payable.

25. **Time is of the Essence.** Time is of the essence in the performance of each provision of this Security Instrument.

26. **Waiver of Statute of Limitations.** The pleading of the statute of limitations as a defense to enforcement of this Security Instrument, or any and all obligations referred to herein or secured hereby, is hereby waived to the fullest extent permitted by applicable law.

27. **Modification.** This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

28. **Reimbursement.** To the extent permitted by applicable law, Borrower shall reimburse Lender for any and all costs, fees and expenses which either may incur, expend or sustain in the performance of any act required or permitted hereunder or by law or in equity or otherwise arising out of or in connection with this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument. To the extent permitted by applicable law, Borrower shall pay to Lender their fees in connection with Lender, including, but not limited to assumption application fees; fees for payoff demands and, statements of loan balance; fees for making, transmitting and transporting copies of loan documents, verifications, full or partial lien releases and other documents requested by borrower or necessary for performance of Lender's rights or duties under this Security Instrument; fees arising from a returned or dishonored check; fees to determine whether the Property is occupied, protected, maintained or insured or related purposes; appraisal fees, inspection fees, legal fees, broker fees, insurance mid-term substitutions, repair expenses, foreclosure fees and costs arising from foreclosure of the Property and protection of the security for this Security Instrument; and all other fees and costs of a similar nature not otherwise prohibited by law.

29. **Clerical Error.** In the event Lender at any time discovers that the Note, any other note secured by this Security Instrument, the Security Instrument, or any other document or instrument executed in connection with the Security Instrument, Note or notes contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from Lender, to reexecute any documents that are necessary to correct any such error(s). Borrower further agrees that Lender will not be liable to Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error.

30. **Lost Stolen, Destroyed or Mutilated Security Instrument and Other Documents.** In the event of the loss, theft or destruction of the Note, any other note secured by this Security Instrument, the Security Instrument or any other documents or instruments executed in connection with the Security Instrument, Note or notes (collectively, the "Loan Documents"), upon Borrower's receipt of an indemnification executed in favor of Borrower by Lender, or, in the event of the mutilation of any of the Loan Documents, upon Lender's surrender to Borrower of the mutilated Loan Document, Borrower shall execute and deliver to Lender a Loan Document in form and content identical to, and to serve as a replacement of, the lost, stolen, destroyed, or mutilated Loan document, and such replacement shall have the same force and effect as the lost, stolen, destroyed, or mutilated Loan Documents, and may be treated for all purposes as the original copy of such Loan Document.

31. **Assignment of Rents.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property. Borrower shall have the right to collect and retain the rents of the Property as they become due and payable provided Lender has not exercised its rights to require immediate payment in full of the sums secured by this Security instrument and Borrower has not abandoned the Property.

32. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

Case 10-83378-JAC13    Doc 19    Filed 08/30/10    Entered 08/30/10 18:32:34    Desc Main
Document        Page 11 of 16

[Check applicable boxes]

[X] Adjustable Rate Rider      [ ] Condominium Rider      [ ] 1-4 Family Rider
[ ] No Prepayment Penalty Option Rider      [ ] Planned Unit Development Rider      [ ] Occupancy Rider
[ ] Other(s) (specify)      [ ]

      BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____      _____ (Seal)
                                                                      -Borrower

_____      _____ (Seal)
                                                                       -Borrower

_____ (Seal)      _____ (Seal)
JAMES E KNOWLES           -Borrower      BEVERLY / KNOWLES         -Borrower

_____ (Seal)      _____ (Seal)
                                                    -Borrower                                               -Borrower

STATE OF ALABAMA, MADISON                   County ss:

      On this    24th day of MAy    2006              , I,

    MICHAEL FELTS                , a Notary Public in and for said county and in said state,
hereby certify that

JAMES E KNOWLES AND BEVERLY KNOWLES HUSBAND AND WIFE

                                                 , whose name(s)   Are signed to the
foregoing conveyance, and who          Are known to me, acknowledged before me that, being informed
of the contents of the conveyance,      They                     executed the same voluntarily and as
                   Their act on the day the same bears date.
          Given under my hand and seal of office this    24th day of MAy    2006

My Commission Expires: NOTARY PUBLIC, STATE OF ALABAMA
                  MY COMMISSION EXPIRES JUNE 25, 2007                 Notary Public

This instrument was prepared by

Page 7 of 7                                                 ALD10017.wp (11-30-01)

## ADJUSTABLE RATE RIDER
### (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made May 24, 2006 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Adjustable Rate Note (the "Note") to
         Option One Mortgage Corporation, a California Corporation
(the "Lender") of the same date and covering the property described in the Security Instrument and located
at:

         1205 STEGER RD,   MERIDIANVILLE, AL 35759-1323
                          [Property Address]

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST
RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE
BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE
MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

The Note provides for an initial interest rate of          9.400%          . The
Note provides for changes in the interest rate and the monthly payments, as follows:

4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
      (A) Change Dates
      The interest rate I will pay may change on the first day of    June 01      2008
and on that day every sixth month thereafter. Each date on which my interest rate could change is called a
"Change Date."
      (B) The Index
      Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the
average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first
business day of the month immediately preceding the month in which the Change Date occurs is called the
"Current Index."
      If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.
      (C) Calculation of Changes
      Before each Change Date, the Note Holder will calculate my new interest rate by adding
      SIX AND 30/100                          percentage point(s) ( 6.300%    )
to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth
of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX - Single Family
Page 1 of 3                                                      USRI0021 (02-23-99)

be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 12.400% or less than 9.400% . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than 15.400% or less than 9.400%

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER
Covenant 17 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX-Single Family
Page 2 of 3

USRI0022 (02-23-99)

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_James E. Knowles_ (Seal)
JAMES E KNOWLES

_____ (Seal)

_____ (Seal)

_Beverly Knowles_ (Seal)
BEVERLY KNOWLES

_____ (Seal)

_____ (Seal)

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX-Single Family
Page 3 of 3

USRI0023 (02-23-99)

All that part of the southwest quarter of Section 4, Township 2 South, Range 1 East of the Huntsville Meridian, Madison County, Alabama, more particularly described as beginning at a 1/2" rebar with tacon cap found being used for the northwest corner of the southwest quarter of said Section 4;

Thence from the point of beginning, south 89 degrees 57 minutes 05 seconds east 744.87 feet to a 1/2" rebar with tacon cap found where the quarter section line intersects the northerly margin of a 60 foot right of way for Steger Road; thence along the northerly margin of said right of way, along a curve to the left with a radius of 372.00 feet, the chord bearing and distance being south 60 degrees 57 minutes 27 seconds west 114.34 feet to a capped 1/2" rebar set at the point of tangency of said curve; thence continue along said margin south 52 degrees 04 minutes 19 seconds west 719.82 feet to a capped 1/2" rebar set; thence along the northwesterly margin of said right of way, along a curve to the left with a radius of 280.00 feet, the chord bearing and distance being south 39 degrees 36 minutes 41

20060614000392420 11/11 $44.75
Madison Cnty Judge of Probate,AL
06/14/2006 02:53:41PM FILED/CERT

Madison County, AL 06/14/2006
State of Alabama
Real Estate Excise Tax
Mortgage Tax:$483.00

# EXHIBIT B

## NOTICE OF FORECLOSURE SALE

Default having been made in the payment of the indebtedness secured by that certain mortgage executed by James E. Knowles and Beverly Knowles, husband and wife, to Option One Mortgage Corporation, on May 24, 2006, said mortgage being recorded in the Office of the Judge of Probate of Madison County, Alabama, at Instrument No. 20060814000392420, subsequently transferred and assigned to HSBC Bank USA, National Association, as Trustee for Citigroup Mortgage Loan Trust, Inc., Asset-Backed Pass-Through Certificates, Series 2007-SHL1; HSBC Bank USA, National Association, as Trustee for Citigroup Mortgage Loan Trust, Inc. Asset-Backed Pass-Through Certificates, Series 2007-SHL1, under and by virtue of the power of sale contained in said mortgage, will sell at public outcry to the highest bidder for cash, in front of the main entrance of the Madison County Courthouse, in Huntsville, Alabama, on June 2, 2011, during the legal hours of sale, the following described real estate, situated in Madison County, Alabama, to-wit:

All that part of the Southwest quarter of Section 4, Township 2 South, Range 1 East of the Huntsville Meridian, Madison County, Alabama, more particularly described as beginning at a 1/2" rebar with tacon cap found being used for the Northwest corner of the Southwest quarter of said Section 4; Thence from the point of beginning, South 89 degrees 57 minutes 05 seconds East 744.87 feet to a 1/2" rebar with tacon cap found where the quarter section line intersects the Northerly margin of a 50 foot right of

THENCE FROM THE POINT OF BEGINNING SOUTH 45 DEGREES 25 MINUTES 07 SECONDS WEST, A DISTANCE OF 989.43 FEET TO A POINT; THENCE SOUTH 46 DEGREES 31 MINUTES 38 SECONDS WEST, A DISTANCE OF 411.71 FEET TO A POINT; THENCE NORTH 00 DEGREES 03 MINUTES 18 SECONDS EAST, A DISTANCE OF 1335.38 FEET TO A POINT; THENCE SOUTH 89 DEGREES 15 MINUTES 01 SECONDS WEST, A DISTANCE OF 538.80 FEET TO A POINT; THENCE NORTH 00 DEGREES 46 MINUTES 59 SECONDS WEST, A DISTANCE OF 584.56 FEET TO A POINT; THENCE NORTH 54 DEGREES 51 MINUTES 28 SECONDS EAST, A DISTANCE OF 461.90 FEET TO A POINT; THENCE SOUTH 55 DEGREES 52 MINUTES 37 SECONDS EAST, A DISTANCE OF 1268.96 FEET TO A POINT; THENCE SOUTH 13 DEGREES 14 MINUTES 18 SECONDS EAST, A DISTANCE OF 456.82 FEET TO THE POINT OF BEGINNING AND CONTAINING 36.94 ACRES MORE OR LESS.

This sale is made for the purpose of paying the indebtedness secured by the Mortgage, as well as the expenses of foreclosure.

This property will be sold on an "as is, where is" basis, subject to any easements, encumbrances and exceptions reflected in the records of the Office of the Judge of Probate of Madison County, Alabama. This property will be sold without warranty or recourse, expressed or implied as to title, use and/or enjoyment and will be sold subject to the right of redemption of all parties entitled thereto.

The undersigned reserves the right to bid for and purchase the property and to credit its purchase price against the expenses of sale and the indebtedness secured by the property. This sale is subject to postpone-

low and may postpone the public auction until another specified time and place. In addition, the Seller expressly reserves the right to bid and purchase at the public auction.

Bentley Buick GMC
Cadillac
Susan         Ashmore,
Admin. Asst.

**April 29, May 6, 2011.**

REED CONTRACTING SERVICES, INC. hereby gives notice of completion of contract with Big Cove Road Drainage located in the City of Huntsville, Alabama (Periodic Project). This notice will appear for four (4) consecutive weeks beginning on 04/29/11 and ending on 05/20/11. All claims should be filed at 2512 Triana Boulevard, SW, Huntsville, AL 35805 during this period.

**April 29, May 6, 13, 20, 2011**

REED CONTRACTING SERVICES, INC. hereby gives notice of completion of contract with Old Madison Pike Guardrail Repair located in the City of Huntsville, Alabama (Periodic Project). This notice will appear for four (4) consecutive weeks beginning on 04/29/11 and ending on 05/20/11. All claims should be filed at 2512 Triana Boulevard, SW, Huntsville, AL 35805 during this period.

**April 29, May 6, 13, 20, 2011**

REED CONTRACTING SERVICES, INC. hereby gives notice of completion of contract with Blanda Drive Guardrail located in the City of Huntsville, Alabama (Periodic Project). This notice will appear for four (4) consecutive weeks beginning on 04/29/11 and ending on 05/20/11. All claims should be filed at 2512 Triana Boulevard, SW, Huntsville, AL 35805 during this period.

**April 29, May 6, 13, 20, 2011**

REED CONTRACTING

ED. THIS PROPERTY WILL BE SOLD WITHOUT WARRANTY OR RECOURSE, EXPRESSED OR IMPLIED AS TO TITLE, USE AND/OR ENJOYMENT AND WILL BE SOLD SUBJECT TO THE RIGHT OF REDEMPTION OF ALL PARTIES ENTITLED THERETO.

This sale is made for the purpose of paying the indebtedness secured by said mortgage, as well as the expenses of foreclosure.

The     Mortgagee/ Transferee reserves the right to bid for and purchase the real estate and to credit its purchase price against the expenses of sale and the indebtedness secured by the real estate.

This sale is subject to postponement or cancellation.

BAC  Home  Loans Servicing,       L.P., Mortgagee/Transferee .

Andy Saag
SIROTE & PERMUTT, P.C.
P. O. Box 55727
Birmingham,       AL
35255-5727
Attorney           for Mortgagee/Transferee
www.sirote.com/fore closures
180472

The above mortgage foreclosure sale has been postponed until 10/18/10 during the legal hours of sale in front of the main entrance of the courthouse in the City of Huntsville,  Madison County, Alabama.

The above mortgage foreclosure sale has been postponed until 12/08/2010 during the legal hours of sale in front of the main entrance of the courthouse in the City of Huntsville,  Madison County, Alabama.

The above mortgage foreclosure sale has been postponed until 01/24/2011 during the legal hours of sale in front of the main entrance of the courthouse in the City of Huntsville   Madison

THIS PROPERTY WILL BE SOLD EN MASSE UNLESS REQUESTED OTHERWISE PRIOR TO THE AUCTION BY NOTICE UPON THE ATTORNEY LISTED BELOW AND IN SUCH CASE AUCTIONEER WILL SELL INDIVIDUAL LOTS OR TRACTS.

THIS PROPERTY WILL BE SOLD ON AN "AS IS, WHERE IS" BASIS, SUBJECT TO ANY EASEMENTS, ENCUMBRANCES, AND EXCEPTIONS REFLECTED IN THE MORTGAGE AND THOSE CONTAINED IN THE RECORDS OF THE OFFICE OF THE JUDGE OR PROBATE OF THE ABOVE-DESCRIBED PROPERTY IS SITUATED. THIS PROPERTY WILL BE SOLD WITHOUT WARRANTY OR RECOURSE, EXPRESSED OR IMPLIED AS TO TITLE, USE AND/OR ENJOYMENT AND WILL BE SOLD SUBJECT TO THE RIGHT OF REDEMPTION OF ALL PARTIES ENTITLED THERETO.

This sale is made for the purpose of paying the indebtedness secured by said mortgage, as well as the expenses of foreclosure.

The Mortgagee reserves the right to bid for and purchase the real estate.. and to credit its purchase price against the expenses of sale and the indebtedness secured by the real estate..

This sale is subject to postponement or cancellation.

North Alabama Bank, Mortgagee
Todd R. Howard
Rahmani   Law   Firm, LLC.,
Attorney for Mortgagee
513 Madison Street
Huntsville, AL 35801
256.533.2002

**May 6, 13, 2011**

## CRAMPED

Does your

---

## MORTGAGE FORECLOSURE SALE

Default having been made in the payment of the indebtedness secured by that certain mortgage executed by William M. Chapman and wife, Laurie D. Chapman, to Mortgage Electronic Registration Systems, Inc. solely as nominee for Renasant Bank, on the 5th day of January, 2007, said mortgage recorded in the Office of the Judge of Probate of Madison County, Alabama, in Instrument Number 20070108000014120; said mortgage having subsequently been transferred and assigned to Countrywide Home Loans Servicing, LP, by instrument recorded in Instrument Number 20081202000740850, in the aforesaid Probate Office the undersigned BAC Home Loans Servicing, LP

---

REED CONTRACTING SERVICES, INC. hereby gives notice of completion of contract with Cove Road Drainage located in the City of Huntsville, Alabama (Periodic Project). This sale is subject to postponement or can-

---

ON WARRANTY OR RECOURSE,     EXPRESSED OR IMPLIED AS TO TITLE, USE AND/OR ENJOYMENT ND WILL BE SOLD SUBJECT       TO      THE RIGHT OF REDEMPTION OF ALL PARTIES ENTITLED THERETO. No sale is made for the purpose of paying the indebtedness secured by said mortgage, as well as the expenses of foreclosure.

The    Mortgagee/ Transferee reserves the right to bid for and purchase the real estate and to credit its purchase price against the expenses of sale and the indebtedness secured by the real estate.

This sale is subject to postponement or cancellation.

Andy Saag
SIROTE & PERMUTT, P.C.
P. O. Box 55727
Birmingham,        AL
35255-5727
Attorney for Mortgagee/Transferee
www.sirote.com/fore closures
194812.

**April 22, 29, May 6, 2011**

Post-it® brand fax transmittal memo 7671    # of pages ▸ 2

To: Bubba Grimsley      From: Beverly Knowles
Co.                      Co.
Dept.                    Phone #
Fax # 251-990-0126       Fax # 256-955-3567

Countywide Home Loans Servicing, L.P., as Mortgagee, under and by virtue of the power of sale contained in said mortgage, will, on the high-est bidder for cash, in front of the main en-trance at Huntsville, Madison County, Ala-bama, on May 23, 2011, during the legal hours of sale and in-so-fi, in and to the fol-lowing described real estate, situated in Madison County, Ala-bama, to-wit:

Lot 2, as shown on the plat of Hid-den Lake, as recorded in Plat Book 40, Page 16, in the Office of the Judge of Probate of Madison County, Ala-bama.

THIS PROPERTY WILL BE SOLD ON AN "AS IS, WHERE IS" BASIS, ANY SUBJECT TO EASEMENTS, ENCUM-BRANCES, AND EX-CEPTIONS REFLECTED IN THE MORTGAGE AND THOSE CON-TAINED IN THE RE-CORDS OF THE OFFICE OF THE JUDGE OF PROBATE OF THE COUNTY WHERE THE ABOVE-DESCRIBED PROPERTY IS SITU-ATED. THIS PROPERTY WILL BE SOLD WITH-OUT WARRANTY OR RECOURSE, EX-PRESSED OR IMPLIED AS TO TITLE, USE

May 6, 13, 20, 2011

way for Sieger Road; thence along the said main right of way, along a curve to the left with a radius of 372.00 feet to a chord being South 60 de-grees 57 minutes 27 seconds West 119.14 feet to the P.C. of a reverse curve; thence along said main-line along a curve to the right with a radius of tangency of said curve; thence contin-ue along said main-line South 52 degrees 04 minutes 19 seconds West 719.82 feet to a capped 1/2" rebar set; thence along the Northwesterly margin of said right of way being and distance being South 39 de-grees 16 minutes 41

This sale is made for the purpose of paying the indebtedness se-cured by said mort-gage, as well as the expense of foreclo-sure.

HSBC Bank USA, Na-tional Association, as Trustee for Citigroup Mortgage Loan Trust Inc., Asset-Backed Pass-Through Certifi-cates, Series 2007-SKL1
Transferee

Jauregui & Lindsey, LLC 2110 Devereux Circle, Ste 100
Birmingham, Al 35243
(205) 968-8888

May 6, 13, 20, 2011

ment or cancellation.

ServisFirst Bank
This instrument Pre-pared By Troy A. Rutherford BAIRD & BINGHAM LLP Post Office Box 306 Birmingham, Alabama 35201

Attorney for ServisFirst Bank

April 29, May 6, 13, 2011

NOTICE OF MORTGAGE FORECLOSURE SALE

Default having been made in the payment of the indebtedness the terms of that certain Mortgage executed by Tracy Brown and James C. Brown, her husband, to Mortgage Electron-ic Registration Sys-tems, Inc. ("MERS"), solely as nominee for Lender's Superior Bank, and Lender's successors and as-signs), dated the 28th day of May, 2010, which Mortgage was recorded in the office of the Judge of Pro-bate of Madison County, Alabama, un-der Instrument Num-ber 20100601002455960; and said Mortgage having subsequently been assigned and as-signed to Alabama Housing Finance Au-thority, as Assignee of

gives notice of com-pletion of contract with Talwell Drive Guardall located in the City of Huntsville, Alabama (Periodic Project). this notice will appear for (4) consecutive weeks beginning on 04/29/11 and ending on 05/20/11.

should be filed at 2512 Triana Boulevard, SW, Huntsville, AL 35805 during this period.

April 29, May 6, 13, 2011

REED CONTRACTING SERVICES, INC. hereby gives notice of com-pletion of contract with Ashburn Guardrail Re-pair located in the bity of Huntsville, Ala-bama (Periodic Proj-ect). this notice will appear for four (4) consecutive weeks beginning on 04/29/11 and ending on 05/20/11. All claims should be filed at 2512 Triana Boulevard, SW, Huntsville, AL 35805 during this period.

April 29, May 6, 13, 20, 2011

REED CONTRACTING SERVICES, INC. hereby gives notice of com-pletion of contract with Fern Bell Park audic Project). This no-tice will appear for four (4) consecutive weeks beginning on

County, Alabama.

The above mortgage sale has been postponed until 02/28/2011 during the legal hours of sale in front of the main en-trance at the court-house in the City of Huntsville, Madison County, Alabama.

The above mortgage foreclosure sale has been postponed until 01/28/2011 during the legal hours of sale in front of the main en-trance in the City of Huntsville, Madison County, Alabama.

The above mortgage sale has been postponed until 06/02/2011 during the legal hours of sale in front of the main en-trance in the City of Huntsville, Madison County, Alabama.

The above mortgage foreclosure sale has been postponed until 05/27/2011 during the legal hours of sale in front of the main en-trance in the City of Huntsville, Madison County, Alabama.

Sept. 11, 18, 25, Oct. 7, 23, Dec. 10, 2010, Jan. 29, March 4, April 9, May 6, 2011

Does your house have the CRAMPED feeling?

Let a garage sale ad in The Huntsville Times Classified help you out.

Call

256-532-4222

# EXHIBIT C

This Instrument Prepared By: Phillip L. Jauregui, 2110 Devereux Circle, Birmingham, Al 35243

STATE OF ALABAMA
COUNTY OF MADISON



2011051900058280 1/1 $21.75
Madison Cnty Judge of Probate, AL
05/19/2011 10:00:37 AM FILED/CERT

### ASSIGNMENT OF MORTGAGE

KNOW all men by these presents, that the undersigned **Sand Canyon Corporation f/k/a Option One Mortgage Corporation** for good and valuable consideration to it in hand paid by **HSBC Bank USA, National Association, as Trustee for Citigroup Mortgage Loan Trust, Inc., Asset-Backed Pass-Through Certificates, Series 2007-SHL1** does GRANT, BARGAIN, SELL, CONVEY AND ASSIGN unto **HSBC Bank USA, National Association, as Trustee for Citigroup Mortgage Loan Trust, Inc., Asset-Backed Pass-Through Certificates, Series 2007-SHL1** all of its right, title and interest in and to a certain Mortgage executed by **James E. Knowles and Beverly Knowles, husband and wife,** unto Option One Mortgage Corporation dated May 24, 2006, and recorded in the Office of the Judge of Probate of Madison County, Alabama, in Instrument No. 20060614000392420, together with the debt secured thereby.

This Assignment is effective as of **May 2, 2011.**

The property subject to this Assignment is known as: 1205 Steger Road, Meridianville, AL 35759
Loan No.: xxxxxx2626

IN WITNESS WHEREOF, _____ Elizabeth Boulton _____ executed this Assignment of Mortgage as of the 9th day of _____ May _____, 2011.

Sand Canyon Corporation f/k/a Option One Mortgage Corporation

By: _____

Title: **Vice President**

2011051900058280 1/1 $21.75
Madison Cnty Judge of Probate, AL
05/19/2011 10:00:37 AM FILED/CERT

STATE OF ____ Florida ____  )
COUNTY OF ____ Duval ____  )

I, the undersigned, a Notary Public in and for said County, in said State hereby certify that _____ Elizabeth Boulton _____ _____ Vice President _____, whose name as _____ of Sand Canyon Corporation f/k/a Option One Mortgage Corporation, is signed to the foregoing conveyance and who is known to me, acknowledge before me on this date that, being informed of the contents of the conveyance, he/she, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation.

Given under my hand this the ___9___ day of ___May___, 2011.

_____
Notary Public
My Commission Expires: 4-30-2013

NOTARY PUBLIC-STATE OF FLORIDA
Brenda L. Frazier
Commission # DD885641
Expires: APR. 30, 2013
BONDED THRU ATLANTIC BONDING CO., INC.



JAUREGUI & LINDSEY LLC
2110 DEVEREUX CIR
SUITE 100
BIRMINGHAM, AL 35243

# EXHIBIT D

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| RON WILSON, SR. & | : | Case No. 07-11862 (EWM) |
| LaRHONDA WILSON, | : | |
| | : | |
| Debtors. | : | |

## DECLARATION OF DALE M. SUGIMOTO,
## AS PRESIDENT OF SAND CANYON CORPORATION

I, Dale M. Sugimoto declare as follows:

1.     I am the President of Sand Canyon Corporation ("Sand Canyon")

f/k/a Option One Mortgage Corporation ("OOMC"). H&R Block Inc. ("HRB") is the ultimate

parent company of Sand Canyon. Sand Canyon is wholly-owned by OOMC Holdings LLC,

which is wholly-owned by Block Financial LLC, which is wholly-owned by H&R Block Group,

Inc., which is wholly-owned by HRB, a publicly traded corporation.

2.     Effective as of April 30, 2008, HRB sold OOMC's mortgage loan

servicing business to American Home Mortgage Servicing, Inc. ("AHMS"), an affiliate of WL

Ross & Co. LLC.   Pursuant to the sale agreement, OOMC changed its name to "Sandy Canyon

Corporation."

3.     In a May 1, 2008 press release, Richard C. Breeden, the chair of HRB's

board of directors, stated that "[t]he closing of the Option One sale is a significant milestone in

the transformation and refocusing of H&R Block" whereby HRB "delivered on the promise we

made to shareholders to change the future course of our company" to do "what we do best, which

is serving the tax preparation needs of tens of millions of clients." The May 1, 2008 press

release is available on the internet at http://www.hrblock.com/press/Article.jsp?articleid=1531.

4.      In addition, in its 2008 Annual Report, HRB stated as follows:

DISCONTINUED OPERATIONS - Effective November 2006, our Board
of Directors approved a plan to exit the mortgage business operated
through our subsidiary, OOMC, and we began reporting that business as
discontinued operations.  During our third fiscal quarter ended January 31,
2008, OOMC ceased all loan origination activities, and initiated a plan to
sell its servicing operations.

On April 30, 2008, OOMC sold its loan servicing assets to an affiliate of
WL Ross & Co. LLC (WL Ross) pursuant to a previously announced
agreement.

5.      Accordingly, Sand Canyon is no longer engaged in the servicing of

residential mortgage loans.  Sand Canyon has no servicing rights.

6.      Sand Canyon also does not own any residential real estate mortgages.

7.      Sand Canyon's present business involves dealing with litigation claims,

including title issues or litigation relating to servicing prior to the sale of OOMC's servicing

rights to AHMS.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:  March 18, 2009

By:  _____
     Dale M. Sugimoto
     President of Sand Canyon Corporation

- 2 -

# EXHIBIT E

**WOOLLEY EDGE & GRIMSLEY**
**ATTORNEYS AT LAW**
**A LIMITED LIABILITY COMPANY**

21 S. SECTION STREET
FAIRHOPE, ALABAMA
36532

251.279 0710
dwgrimsleyjr@me.com

March 5, 2011
American Home Mortgage Servicing Inc.
Attn: Legal Department
538 Broadhollow Road
Melvill, NY 11747

**In the Matter of:**
James E. Knowles
Beverly K. Knowles
1205 Steger Road
Meridianville, AL 35759
Our File No:  Knowles-11-30
Your Account No:  0021622626

Dear Sir or Madam:

Please treat this letter as a "qualified written request" under Section 6(e)  of the Real Estate
Settlement Procedures Act, 12 U.S.C. 2605(e).  This request is made on behalf of my Clients,
above-named, based on the pending dispute about the proper application of payments to in-
terest, principal, escrow advances and expenses (in that order of priority as provided for in
the loan instruments); about your use of suspense accounts in connection with your receipt of
client's payments; about your use of legacy late charges with respect to mortgage payments;
about your use of automatically triggered property inspections and broker price opinion
charges and fees based on legacy accounting for arrears; and about legal fees and expenses
that have been attached to this account in the form of corporate advances.  Specifically, I am
requesting the following information:

1.      A complete and original life of loan transaction history to the date of your response to
this letter prepared by the Servicer from its own records using its own system and default
servicing personnel. Also, please identify the mortgage servicing software you use in connec-
tion with this loan (MSP, LSAMS, etc).

2.      A copy of your Key Loan Transaction history, bankruptcy work form, XLS spread-
sheet, or any other manually-prepared spreadsheet or record of all accounts associated with

this mortgage loan (this would include both recoverable and non-recoverable and restricted and non-restricted accounts).

3.     A full and complete plain-English definitional dictionary of all transaction codes and other similar terms used in the records requested above or any of the other documents or records requested or referred to herein.

4.     If this is a MERS or MOM loan, please attach a copy of all MERS Milestone Reports

5.     If this is a MERS or MOM loan, please attach a copy of all MIN Reports.

6.     Please identify the full name, address and telephone number of the current holder of the original mortgage note including the name, address and phone number of any Trustee under the Trust or other fiduciary.  This request is being made pursuant to Section 1641(f)(2) of the Truth In Lending Act, which requires the servicer to identify the holder of the debt.

7.     Copies of all collection notes, collection records, communication files or any other form of recorded data with respect to any communications between you and the debtor.

8.     An itemized statement of the full amount needed to reinstate the mortgage as of the date of your response along with an itemized pay-off statement.

9.     Copies of all written or recorded communications between you and any non-lawyer third parties regarding this mortgage (including but not limited to LPS Desktop communiqués, NewTrak communications, NewInvoice transmittals, NewImage transmittals, electronic communications by email or otherwise, collection notes, and any other form of written or electronic document related to the servicing of or ownership of this loan).

10.     All P-309 screen shots of the history all of the accounts (principal, interest, escrow, late charges, legal fees, property inspection fees, broker price opinion fees, statutory expense fees, miscellaneous fees, corporate advance fees, etc.) associated with this loan.


You should be advised that you must ac knowledge receipt of this qualified written request within five (5) business days, pursuant to 12 U.S.C. Section 2605(e)(1)(A) as amended effective July 16, 2010 by the Dodd-Frank Financial Reform Act and Reg. X Section 3500.21(e)(1).


You should also be advised that the debtor(s) herein will seek the recovery of damages, costs, and reasonable legal fees for each failure to comply with the questions and requests herein. The debtor(s) also reserve the right to seek statutory damages for each violation of any part

of Section 2605 of Title 12 of the United States Code in the amount of $2,000.00 for each violation.

Sincerely yours,


D W Grimsley, Jr.

# EXHIBIT F

U.S. POSTAGE
PAID
FAIRHOPE, AL
36532
MAR 05, 11
AMOUNT
$5.54
0006556614

1747

1000

UNITED STATES
POSTAL SERVICE

AGING INC.

CERTIFIED MAIL

7010 2780 0000 2794 6984

REFUSED

WOOLLEY EDGE & GRIMSLEY
ATTORNEYS AT LAW

PO BOX 564
FAIRHOPE, AL 36533

MAR 18 2011

# EXHIBIT G

Bubba,

Here is what was on USPS.com regarding letter sent to AHMSI:

Label/Receipt Number: 0310 2010 0000 5399 5365
Expected Delivery Date: April 4, 2011
Class: Priority Mail®
Service(s): Delivery Confirmation™
Status: Delivered



Your item was delivered at 11:53 am on April 04, 2011 in MELVILLE, NY 11747.

Detailed Results:

- Delivered, April 04, 2011, 11:53 am, MELVILLE, NY 11747
- Out for Delivery, April 04, 2011, 9:36 am, HUNTINGTON STATION, NY 11746
- Sorting Complete, April 04, 2011, 9:26 am, HUNTINGTON STATION, NY 11746
- Arrival at Post Office, April 04, 2011, 4:47 am, HUNTINGTON STATION, NY 11746
- Acceptance, April 01, 2011, 9:12 am, MERIDIANVILLE, AL 35759

**Notification Options**

Track & Confirm by email

Get current event information or updates for your item sent to you or others by email. 



# EXHIBIT H

Apr-20-11   10:07   From-PM                    ✦                 T-677  P.001/001  F-673



DO NOT MAIL PAYMENTS TO
THIS ADDRESS
P.O. Box 619063
Dallas, TX 75261-9063

APRIL 06, 2011



3-764-57887-0000347-001-1-000-000-000-000
James E Knowles
PO Box 647
Meridianville, AL 35759-0647

Re: American Home Mortgage Servicing, Inc. Loan Number 0021622626
    Property Address: 1205 Steger Rd
                      Meridianville AL 35759

Dear James E Knowles :

American Home Mortgage Servicing, Inc. (AHMSI) is in receipt of your
correspondence dated 04/05/11 on the above-mentioned loan number. We
thank you for the opportunity to be of assistance.

We are currently in the process of researching your concerns and/or
request. A response will be issued when our research is complete.

Generally, responses are issued within 15-20 business days; however,
please allow up to 60 business days. Should your correspondence pertain
to an inquiry or dispute regarding the Home Affordable Modification
Program (HAMP), please allow 25 days from the date of this letter for
a response. We appreciate your patience in this matter, as it is
important to us that we respond to your concerns completely and
accurately.

Should you have any further questions or concerns, please do not
hesitate to contact our Customer Care Department at 1.877.304.3100
(Monday - Friday 7:00am - 9:00pm CST and Saturday 7:00am - 4:00pm CST.)

Respectfully,

Loan Administration - Research
AMERICAN HOME MORTGAGE SERVICING, INC.

American Home Mortgage Servicing, Inc., is a debt collector attempting
to collect a debt. Any information obtained will be used for that
purpose. However, in the event the debt has been discharged pursuant
to or the addressee or recipient is under the protection of federal
bankruptcy law, this communication is solely for informational purposes
and is not an attempt to collect a debt.

CS030 050 PAS

251-990-0626

Post-It™ brand fax transmittal memo 7671  # of pages ▸ 1
To B. Grimsky   From B. Knowles
Co.             Co.
Dept.           Phone # 256-955-3020
Fax # 251-990-0626   Fax #