FILED
2012 Jun-18  PM 01:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JAMES E. KNOWLES and** | ) | |
| **BEVERLY K. KNOWLES,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action Number |
| **vs.** | ) | **5:11-cv-01670-AKK** |
| | ) | |
| **AMERICAN HOME** | ) | |
| **MORTGAGE SERVICING,** | ) | |
| **INC., JAUREGUI and** | ) | |
| **LINDSEY, LLC,** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Jauregui & Lindsey, LLC ("J&L") filed a Motion to Dismiss and for Rule 54(b) Certification. Doc. 15. The motion is fully briefed. Docs. 16, 18, and 19. For the reasons set forth below, the motion is **DENIED**.

## I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, ---U.S.---, 129 S. Ct. 1937,

1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Mere

"labels and conclusions" or "a formulaic recitation of the elements of a cause of

action" are insufficient.  *Iqbal*, 129 S. Ct. at 1949 (citations and internal quotation

marks omitted).  "Nor does a complaint suffice if it tenders 'naked assertion[s]'

devoid of 'further factual enhancement.'"  *Id*., at 1949 (citing *Bell Atl. Corp.*, 550

U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a

complaint fails to state a claim upon which relief can be granted.  "To survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to state a claim to relief that is plausible on its face."  *Iqbal*, 129 S. Ct. at

1949 (citations and internal quotation marks omitted).  A complaint states a

facially plausible claim for relief "when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged."  *Id*. (citation omitted).  The complaint must establish

"more than a sheer possibility that a defendant has acted unlawfully."  *Id.*; *see also*

*Bell Atl. Corp.*, 550 U.S. at 555 ("Factual allegations must be enough to raise a

right to relief above the speculative level.").  Ultimately, this inquiry is a "context-

specific task that requires the reviewing court to draw on its judicial experience

and common sense."  *Iqbal*, 129 S. Ct. at 1950.

2

## II. PROCEDURAL AND FACTUAL BACKGROUND[1]

On May 4, 2006, Plaintiffs executed a promissory note (the "Note"), secured by their residence, and obtained a $322,400.00 mortgage loan (the "Loan") from Option One Mortgage Corporation ("Option One").  Doc. 3, at 3.  Option One recorded the Note on June 14, 2006.  *Id.*  American Home Mortgage Servicing, Inc. ("AHMSI") serviced the loan.  *Id.*

On August 19, 2010, Plaintiffs filed for Chapter 13 bankruptcy.  *Id.* at 4.  On August 30, 2010, J&L filed a Motion to Lift the Automatic Stay (the "motion") on behalf of AHMSI, servicing agent for HSBC.  *Id.* at 4 & 15.  J&L represented in the motion that HSBC Bank USA ("HSBC") owned the mortgage due to an assignment from Option One.  *Id.* at 4.  The bankruptcy court granted the motion with the parties' consent.  *Id.* at 5.  However, Plaintiffs contend they learned subsequently that no actual assignment occurred from Option One to HSBC and that J&L knowingly filed a false and fraudulent motion on behalf of AHMSI.  *Id.* at 4-5.  *Id.*

On May 2, 2011, J&L sent Plaintiffs a "notice of acceleration" letter (the

---

[1]"When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)).  However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009).

"Letter"), stating that J&L "represented Fidelity National Foreclosure and Bankruptcy Solutions ("Fidelity") on behalf of AHMSI, servicing agent for HSBC" and that it intended to collect a debt or to foreclose. *Id.* Thereafter, J&L published the foreclosure notice on May 6, 2011, demanding $411,093.38 and stating that Option One assigned Plaintiffs' mortgage to HSBC. *Id.* J&L republished the notice on May 13 and May 20, 2011. *Id.* On May 19, 2011, J&L recorded the assignment of the mortgage, with an effective date of May 2, 2011, "from Sand Canyon f/k/a Option One to HSBC." *Id.* at 6. Plaintiffs contend that Elizabeth Boulton ("Boulton") signed the assignment on behalf of Option One, even though Boulton worked for AHMSI at the time. *Id.*

### III. ANALYSIS

Plaintiffs filed this lawsuit on August 8, 2011, alleging that J&L violated the Fair Debt Collections Practices Act ("FDCPA") (Count I) and conveyed fraudulent information to the bankruptcy court (Count II). *Id.* at 9-10. Each claim is analyzed below.

### A.    <u>FDCPA Claim – Count I</u>

Among other things, the FDCPA prohibits "debt collectors"[2] from using a

---

[2] A "debt collector" is any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be

"false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692(e); *see also Reese v. Ellis, Painter, Ratterree & Adams, LLP*, No. 10-14366, 2012 WL 1500108, at *3 (11th Cir. May 1, 2012).  However, "[a]n enforcer of a security interest, such as a [mortgage company] foreclosing on mortgages of real property . . . falls outside the ambit of the FDCPA except for the provisions of section 1692f(6)."[3]  *Warren v. Countrywide Home Loans, Inc.*, 342 F. App'x. 458, 460 (11th Cir. 2009). Moreover, "if a person enforcing a security interest is not a debt collector, it likewise is reasonable to conclude that enforcement of a security interest through the foreclosure process is not debt collection for purpose of the Act." *Id.* at 461 (quoting *Overton v. Foutty & Foutty, LLP*, No. 1:07-cv-0274-DFH-TAB, 2007 WL 2413026 (S.D. Ind. Aug. 21, 2007)). "If a person invokes judicial remedies

---

owed or due another.  15 U.S.C. § 1692a(6).

[3] Section 1692f(6) prohibits the "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if--

    (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;

    (B) there is no present intention to take possession of the property; or

    (C) the property is exempt by law from such dispossession or disablement."

15 U.S.C.A. § 1692f(6)

only to enforce the security interest in property, then the effort is not subject to the FDCPA." *Id*. at 461.  Thus, to state a "plausible FDCPA claim under § 1962e, a plaintiff must allege, among other things, (1) that the defendant is a 'debt collector' and (2) that the challenged conduct is related to debt collection." *Reese*, 2012 WL 1500108, at *3.

Here, Plaintiffs allege that J&L is a "debt collector" and that J&L violated several provisions of the FDCPA by (1) sending Plaintiffs a Letter stating that it represented AHMSI in violation of section 1692e; (2) misrepresenting the character and legal status of the debt and advertising the foreclosure in violation of sections 1692e(2), 1692e(4) and 1692d(4); (3) participating in a fraudulent assignment of the mortgage as an illegal means to collect a debt, in violation of section 1692e(5); and (4) that "the actions of Defendant J&L is [sic] unfair and unconscionable, thereby violating the [FDCPA] at 15 U.S.C. § 1692f."  Doc. 3, at 7-9.  J&L disagrees and asserts that it is not subject to the FDCPA because it is not a "debt collector."  Doc. 16, at 8.  To support its position, J&L maintains that "[t]he Eleventh Circuit has held that the FDCPA, except for limited circumstances under § 1692(f)(6), does not apply to mortgage foreclosures as such foreclosures do not constitute debt collection activities governed by the FDCPA."  *Id*. Additionally, J&L relies on *Warren* in which the Eleventh Circuit noted that while

the FDCPA does not define debt collection, "the plain language of the FDCPA

supports the . . . conclusion that foreclosing on a security interest is not debt

collection activity . . . . Indeed, the statute specifically says that a person in the

business of enforcing security interests is a 'debt collector' for the purposes of §

1692g, which reasonably suggests that such a person is not a debt collector for

purposes of other sections of the Act." *Warren*, F. App'x at 460.  Thus, J&L

asserts that because it represented a creditor trying to foreclose on a house, rather

than one collecting on a debt, the FDCPA does not apply.  *Id.*

   Unfortunately for J&L, the Eleventh Circuit recently rejected J&L's broad

argument that *all* attempts to enforce a security interest fall outside the FDCPA:

> The rule the Ellis law firm asks us to adopt would exempt from the
> provisions of § 1692e any communication that attempts to enforce a
> security interest regardless of whether it also attempts to collect the
> underlying debt.  That rule would create a loophole in the FDCPA.  A
> big one.  In every case involving a secured debt, the proposed rule
> would allow the party demanding payment on the underlying debt to
> dodge the dictates of § 1693e by giving notice of foreclosure on the
> secured interest.  The practical result would be that the Act would
> apply only to efforts to collect unsecured debts.  So long as the debt
> was secured, a lender (or its law firm) could harass or mislead a
> debtor without violating the FDCPA.  That can't be right.  It isn't.  A
> communication related to debt collection does not become unrelated
> to debt collection simply because it also relates to the enforcement of
> a security interest.  A 'debt' is still a 'debt' even if it is secured.

*Reese*,  2012 WL 1500108, at *5.  Stated differently, rather than accepting J&L's

broad assertion that it sought simply to enforce a "security interest," the court must also ascertain whether J&L, in fact, sought to collect a "debt."[4] *See generally id.* In that regard, accepting Plaintiffs' facts as true, Plaintiffs received a mortgage loan for $322,400.00 to refinance their property and executed a promissory note secured by the loan.  Doc. 3, at 3.  After Plaintiffs defaulted, "Defendant J&L sent a letter to Plaintiffs . . . . The May 2 Letter was an industry standard 'notice of acceleration' and an 'attempt to collect a debt' and foreclosure notice . . . ."  *Id.* at 5.  Moreover, the Letter informed Plaintiffs that "[t]his is an *attempt to collect a debt*, and any information obtained will be used for that purpose."  Doc. 18-1, at 2 (emphasis added).  The Letter added further that "[t]he amount of indebtedness owed to HSBC Bank as of the date hereof is . . . $411,093.38 plus accrued interest and this firm's fees and expenses."  *Id.*  Additionally, the Letter stated that "HSBC Bank has elected to, and does hereby, declare the entire indebtedness secured by your mortgage to be due and payable . . . ."  *Id.*

In light of these facts, the FDCPA's definition of "debt" "clearly encompasses [Plaintiffs'] payment obligations under the promissory note at issue in this case," *Reese*,  2012 WL 1500108, at *4, because Plaintiffs are consumers whose obligation to pay money arose from a "transaction in which the . . . property

---

[4] "The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."  15 U.S.C. § 1692a(5).

. . . [is] primarily for personal, family, or household purposes," 15 U.S.C. § 1692a(5). Thus, "the promissory note is a 'debt' within the plain language of § 1692a(5)." *Reese*, 2012 WL 1500108, at *4; *see also Bourff v. Rubin Lublin, LLC,* 674 F.3d 1238, 1241 (11th Cir. Mar. 15, 2012) (holding that a letter requesting payment on a promissory note secured by a mortgage is "an attempt at debt collection" within the meaning of the FDCPA).[5] Significantly, J&L's contention that it attempted simply to enforce a security interest, "wrongly assumes that a communication cannot have dual purposes. Even if the [J&L] firm intended the letter and documents to give notice of the foreclosure to the [Plaintiffs], they also could have – and did – demand payment on the underlying debt." *Reese*, 2012 WL 1500108, at *4. Therefore, the court finds that Plaintiffs asserted sufficient allegations to allege that J&L attempted to collect a "debt."

Finding that J&L may have attempted to collect a debt is only one factor in the analysis. The court must still address whether Plaintiffs alleged sufficient facts that J&L is a "debt collector" as defined by 15 U.S.C. § 1692a(6). In that respect, J&L can qualify as a "debt collector" by either using "'an instrumentality of

---

[5] In *Bourff*, a law firm sent notice to a plaintiff stating that BAC, the creditor of the plaintiff's loan, had retained the law firm to help collect a debt on the loan and that the law firm's letter to the plaintiff constituted a "NOTICE PURSUANT TO FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C § 1962" and that it was "AN ATTEMPT TO COLLECT A DEBT." 674 F.3d at 1240. The plaintiff's complaint alleged that BAC "received an assignment of the security deed and debt . . . for the purpose of facilitating collection of such debt for another . . . ." *Id*. at * 2. The court held that the law firm was a "debt collector" under the FDCPA and violated its provisions because it misrepresented BAC as a creditor instead of a debt collector. *Id.*

interstate commerce or the mails' in operating a business that has the principle purpose of collecting debts or by 'regularly' attempting to collect debts." *Reese*, 2012 WL 1500108, at *5. While it is clear from the complaint that J&L used "an instrumentality of interstate commerce or the mails," it is not clear whether Plaintiffs are maintaining that J&L's "principle purpose" is collecting debts or that J&L regularly attempts to collect debts. Nonetheless, because the *Reese* court allowed a claim against a law firm to proceed where the plaintiff alleged that the law firm is "engaged in the business of collecting debts owed to others incurred for personal, family[,] or household purposes . . . that in the year before the complaint was filed the firm had sent more than 500 people 'dunning notice[s]' containing the 'same or substantially similar language' to that found in the letter and documents attached to the complaint in this case," *Reese*, 2012 WL 1500108, at *6, the court believes it is premature to conclude at this juncture that J&L is not "operating a business that has the principle purpose of collecting debts or by 'regularly' attempting to collect debts." Instead, the court will give Plaintiffs an opportunity to conduct some discovery on this issue to see if they can establish that J&L meets the *Reese* criteria. Accordingly, the motion to dismiss the FDCPA claim is **DENIED** without prejudice.

### B.   Fraud Claim – Count II

In Count II, Plaintiffs allege that J&L filed a fraudulent motion with the

10

bankruptcy court by representing that HSBC properly secured an interest in Plaintiffs' property, which Plaintiffs relied on, and, as a result, suffered harm, i.e., a foreclosure action.  Doc. 3, at 10.  J&L contends that dismissal is warranted because (1) the fraud claim is preempted by bankruptcy law, (2) J&L's actions and statements related to the motion to lift the stay are protected under Alabama's litigation privilege, and (3) Plaintiffs are collaterally estopped from bringing claims against J&L.  Doc. 16, at 12-20.  The court addresses each contention below.

### 1.    <u>Plaintiffs' Fraud Claim is Not Preempted by Bankruptcy Law.</u>

First, relying on *In re Sims*, 278 B.R. 457 (E.D. Tenn., Bankr. 2002), J&L contends that "[a]ny state-law claims against J&L based upon representations made to or filings made with the Bankruptcy Court are preempted and precluded under federal bankruptcy law . . . ."  Doc. 16, at 12.  In *In re Sims*, the court held that chapter 13 debtors could not bring a state law claim against a creditor for abuse of process or material misrepresentation on allegations that the creditor knowingly and willingly made false material misrepresentations in the bankruptcy court because "[p]ermitting assertion of a host of state law causes of action to redress wrongs under the Bankruptcy Code would undermine the uniformity the

Code endeavors to preserve and would 'stand as an obstacles to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* at 480.  Therefore, the court dismissed the state claim on preemption grounds. *Id*. at 479.

J&L's reliance on *In re Sims* is misplaced for two reasons.  First, the plaintiffs in *In re Sims* attacked the actual *creditor*, rather than its lawyers, for "knowingly and willingly ma[king] false material misrepresentations to the [Bankruptcy] Court . . . ." 278 B.R. at 479.  Here, J&L was not an actual party in the bankruptcy proceedings.  Consequently, the policy reasons for the decision in *In re Sims* do not apply.  Second, the *In re Sims* plaintiffs' state law claim of material misrepresentation "presuppose[d] a violation of the Bankruptcy Code" and the plaintiffs filed their state claims during the course of the bankruptcy proceedings.  *Id*. In contrast, here, Plaintiffs' fraud claim does not presuppose a violation of the bankruptcy code.  Rather, Plaintiffs allege only that J&L made a fraudulent representation to the bankruptcy court about the owner of Plaintiffs' mortgage.  In other words, Plaintiffs are not seeking to litigate a bankruptcy code matter in this court.  Moreover, unlike the debtors in *In re Sims*, Plaintiffs filed their fraud claim after the confirmation of their plan, doc. 46, and *after* the

bankruptcy judge granted the Trustee and Plaintiffs' application to employ special

counsel to bring *this* state law civil action against J&L.  Therefore, applying *In re*

*Sims* here would be improper and would actually undermine the bankruptcy

judge's decision to authorize the pursuit of this matter by the Trustee.

Accordingly, as it relates to the bankruptcy preemption argument, the motion to

dismiss the fraud claim is **DENIED**.

> 2.   **J&L's Actions and Statements Related to the Motion to Lift the Bankruptcy Stay Are Not Protected under Alabama's Litigation Privilege**.

Alternatively, J&L contends that the court should dismiss the fraud claim

because the motion it filed in the bankruptcy proceeding is protected by the

Alabama litigation privilege.  Under Alabama law, "[p]ertinent statements made in

the course of judicial proceedings are absolutely privileged."  *Drees v. Turner*, 45

So. 3d 350, 358 (Ala. Civ. App. 2010) (citing *O'Barr v. Feist*, 292 Ala. 440, 445-

46 (1974)).  Moreover, "[a]bsolutely privileged statements, no matter how false or

malicious, cannot be made the basis of civil liability."  *Drees,* 45 So. 3d at 358

(citing *O'Barr*, 292 Ala. at 445).  Significantly, the privilege extends also to

lawyers: "Absolute privilege exists in favor of those involved in judicial

proceedings, including judges, lawyers, jurors, and witnesses, shielding them from

an action for defamation." *Cutts v. American United Life Ins. Co.*, 505 So. 2d

1211 (Ala. 1987).  Indeed,

> [t]he privilege is a matter of public policy, and is not intended so
> much for the protection of those engaged in the public service and in
> the enactment and administration of law, as for the promotion of the
> public welfare, the purpose being that members of the legislature,
> judges of courts, jurors, lawyers, and witnesses may speak their minds
> freely and exercise their respective functions without incurring the
> risk of a criminal prosecution or an action for the recovery of
> damages.

*Dress*, 45 So. 2d at 358-59.  Finally, as it relates to the dispute before this court,

Alabama courts have extended the privilege beyond defamation claims.  *Id.* at 358.

Based on the case law, J&L contends that it has absolute protection from

any statements it made in the course of the bankruptcy proceedings.  Doc. 16, at

15.  However, J&L overlooks that the absolute privilege in *Drees and Cutts*

applied to misrepresentations made about other litigants in the course of a judicial

proceeding.  *Drees*, 45 So. 3d at 358.  Here, J&L's motion allegedly contained

fraudulent information about the identity of a non-party that purportedly held a

security interest in Plaintiffs' property.  Moreover, allegedly, J&L knew about the

fraudulent nature of the information and filed it nonetheless to obtain relief for its

non-party client.  If these allegations are true, allowing lawyers to claim immunity

from filing fraudulent motions would significantly undermine Alabama Rule of

14

Professional Conduct ("ARPC") Rule 3.3's requirement that lawyers maintain candor with the court. *See* ARPC Rule 3.3 ("(a) A lawyer shall not knowingly: (1) make a false statement of material fact or law to a tribunal; (2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client; or (3) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures."). While, as a matter of public policy, courts want litigants to freely prosecute their cases without worrying about their opponents filing defamation or similar lawsuits against them, the justifications for such a policy are less applicable in situations where, as here, lawyers allegedly knowingly filed fraudulent information to obtain otherwise unavailable relief. To allow blanket immunity under these alleged facts is akin to condoning the filing of allegedly fraudulent motions. This court is not prepared to do so *at this juncture* especially since the relevant cases on the privilege involve litigants and parties to a lawsuit and, as such, are distinguishable from the alleged facts before the court. Accordingly, as it relates to the Alabama litigation privilege argument, J&L's motion on the fraud claim is also **DENIED**.[6]

---

[6]In light of the court's holding, the court need not reach Plaintiffs contention that their claims relating to the Letter are not protected by Alabama Litigation Privilege and that J&L

### 3. <u>Plaintiffs Are Not Collaterally Estopped from Bringing Claims Against J&L.</u>

Finally, J&L asserts that dismissal of the fraud claim is warranted on collateral estoppel grounds. "Collateral estoppel . . . has the dual purpose of protecting litigants from the burden of relitigating an *identical issue* with the same party or his privy and of promoting judicial economy by preventing needless litigation." *CSX Transp., Inc. v. Bhd. of Maint. of Way Emp.*, 327 F.3d 1309, 1317 (11th Cir. 2003) (emphasis added). Under Alabama law, collateral estoppel will apply to an issue raised in an administrative proceeding when the following elements are met: "1) there is identity of the parties or their privies; (2) there is identity of issues; (3) the parties had an adequate opportunity to litigate the issues in the administrative proceeding; (4) the issues to be estopped were actually litigated and determined in the administrative proceeding; and (5) the findings on the issues to be estopped were necessary to the administrative decision." *Hale v. Hyundai Motor Mfg. Alabama*, LLC, No. 2100991 2012 WL 29168, *7 (Ala. Civ.

---

failed to identify what "litigation was pending on May 2, 2011, when the collection letter was mailed to the Plaintiffs." Doc. 18, at 14. Plaintiffs overlook, however, that in Count II, they plead a claim based on a court filing rather than the Letter. Specifically, Plaintiffs state that "Defendant J&L filed false pleading in their MFRS . . . . Plaintiffs consented to J&L MFRS due to false claims filed in the bankruptcy case, based on their reliance on the documents filed by Defendant J&L." Doc. 3, at 10. In other words, Count II is based on the *pleading* J&L filed in the bankruptcy case.

App. Jan. 6, 2012).

J&L contends that Plaintiffs are collaterally estopped from pursuing their fraud claim because (1) Plaintiffs allege "the issue at stake in the Motion to Lift the Automatic Stay was whether the stay should be lifted and foreclosure proceedings commenced by HSBC . . . .[,]" (2) Plaintiffs raised and litigated the issue in the bankruptcy proceeding, (3) the determination of the issues were critical and necessary in lifting the stay because the motion clearly set forth that HSBC was a secured note holder and entitled to foreclose on the issue, and (4) Plaintiffs had a full and fair opportunity to litigate the issues in the bankruptcy proceeding.  Doc. 16, at 19. As it relates to the bankruptcy proceedings, the court notes that J&L's motion, on behalf of AHMSI, cited Plaintiffs "default in the payment of the post-petition installments due HSBC Bank" as grounds for relief. Doc. 19 10-83378-JAC13.  The Trustee disagreed and alleged that the $20,500.00 equity in Plaintiffs' property adequately protected AHMSI.  Doc. 26.  On September 27, 2010, the bankruptcy court held a hearing and then granted J&L's motion with the consent of the parties.  *See* 10-83378-JAC13; Doc. 30.

J&L's reliance on these proceedings for its collateral estoppel argument ignores that Plaintiffs are not trying to relitigate the motion to lift the stay.  Rather,

Plaintiffs are alleging that J&L submitted fraudulent filings to the bankruptcy court and that Plaintiffs, in turn, relied on these filings to consent to the motion to lift the stay.  Moreover, it is clear that the bankruptcy court  proceedings only addressed whether the equity in Plaintiffs' property adequately protected AHMSI or whether the court should lift the stay to allow foreclosure proceedings to commence.  In short, Plaintiffs' fraud claim is not identical to the issues previously addressed by the bankruptcy court; nor are the parties identical.  Accordingly, Plaintiffs are not collaterally estopped from bringing their fraud claim.

## IV. CONCLUSION

For the reasons set forth above, the motion to dismiss and for Rule 54(b) certification is **DENIED**.

**DONE** this 18th day of June, 2012.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

18